# UNITED STATES DISTRICT COURT

──────────── DISTRICT OF WYOMING ────────────

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
OCT 16 2009
Stephan Harris, Clerk
Cheyenne

**ORIGINAL**

UNITED STATES OF AMERICA

V.             CRIMINAL COMPLAINT

**RICKEY ARTHUR KEMPTER**
a/k/a **RICK ARTHUR KEMPTER**

CASE NUMBER: _09-mj-192-J_

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE
**(Making Counterfeit Obligations of the United States)**

On or about October 8, 2009, in Laramie County, in the District of Wyoming, defendant, **Rickey Arthur KEMPTER** a/k/a Rick Arthur Kempter with intent to defraud, did falsely make, forge, counterfeit, or alter obligations of the United States, that is, as follows:

**CONTINUED - SEE ATTACHMENT "A"**

I further state that I am a Special Agent with the United States Secret Service ("USSS") and that this compliant is based on the following facts:

**AFFIDAVIT CONTINUED - SEE ATTACHMENT "B"**

Continued on the attached sheet and made a part hereof:   **X** Yes   No

Signature of Complainant
Rick Near

Sworn to before me and subscribed in my presence,

October 16, 2009      at      Cheyenne, Wyoming

Date                                               City and State

**Hon. William C. Beaman**
United States Magistrate Judge

Name & Title of Judicial Officer               Signature of Judicial Officer

ATTACHMENT A

<u>COUNT ONE - CONTINUED</u>
(Making Counterfeit Obligations of the United States)

Federal Reserve Notes

| Qty | Denom. | Serial Number | Series |
|---|---|---|---|
| 8 | $50.00 | CB35243190A | 2001 |
| 8 | $50.00 | CG06492420A | 2001 |
| 8 | $50.00 | AH18781745A | 1996 |

In violation of 18 U.S.C. § 471.

<u>COUNT TWO</u>
(Possessing Counterfeit Obligations of the United States)

On or about October 8, 2009, in Laramie County, in the District of Wyoming, the Defendant, Rickey Arthur **KEMPTER**, a/k/a Rick Arthur Kempter, with intent to defraud, did possess falsely made, forged, and counterfeited, obligations of the United States, that is, as follows:

Federal Reserve Notes

| Qty | Denom. | Serial Number | Series |
|---|---|---|---|
| 8 | $50.00 | CB35243190A | 2001 |
| 8 | $50.00 | CG06492420A | 2001 |
| 8 | $50.00 | AH18781745A | 1996 |

which Rickey Arthur **KEMPTER**, a/k/a Rick Arthur Kempter then knew to be falsely made, forged and counterfeited.

In violation of 18 U.S.C. § 472.

## ATTACHMENT B

### AFFIDAVIT OF RICK NEAR
### U.S. vs. RICKEY A. KEMPTER a/k/a Rick Arthur Kempter

I, Rick Near, being duly sworn on oath, swear and affirm as follows:

1. I am a special agent of the United States Secret Service ("USSS"), and I have been so employed for over twelve years. During my employment with the U.S. Secret Service, I have investigated crimes pertaining to counterfeit Federal Reserve Notes (FRNs), counterfeit, and forged checks, access device fraud, financial institution fraud, false identification documents, and mail fraud.

2. This affidavit is made in support of a complaint and an application for an arrest warrant for **Rickey Arthur KEMPTER**, a/k/a Rick Arthur Kempter, for violation of Title 18 U.S.C. §471 (Making Counterfeit Obligations) and 18 U.S.C. § 472 (Possessing Counterfeit Obligations).

3. The information contained within this Affidavit is based upon my personal observations, my training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein.

4. On October 8, 2009, I was telephonically contacted by Detective (Det.) James Eddy, Cheyenne Police Department (CPD), Cheyenne, WY, regarding **KEMPTER**. Det. Eddy advised that on October 8, 2009, he responded to the Lariat Motel, 600 Central Ave. Room #3, Cheyenne,

WY, to a report of **KEMPTER** allegedly being in possession of counterfeit (CFT) $50 Federal Reserve Notes (FRNs). According to Det. Eddy, the CPD had responded to the Lariat Motel after being contacted by the BC Cab Company, 1111 E. Lincolnway, Cheyenne, WY, who reported that one of their drivers, James Larzelier, had been given several CFT $50 FRNs. Eight of those FRNs bore serial number (SN) CB35243190A; eight FRNs bore SN CG06492420A; and eight FRNs bore SN AH18781745A. Larzelier was given these CFT FRNs to "hold" while suspect **KEMPTER** was receiving a private dance from an exotic dancer.

5. Upon arrival at the Lariat, Officer Long, CPD, was told by Larzelier that earlier in the evening Larzelier had picked up two females, Tamara Hackett and Andrea Bragg at the Cheyenne Motel, 1601 E. Lincolnway, Cheyenne, WY. Larzelier drove them to a residence located at 671 Vista Lane, Cheyenne, WY, where he (Larzelier) picked up **KEMPTER**. After picking up **KEMPTER**, Larzelier said that he drove the group (**KEMPTER**, Hackett and Bragg) around Cheyenne for approximately 30 minutes. After making a stop at a convenience store where Larzelier said the group (**KEMPTER**, Hackett and Bragg) purchased condoms, Larzelier returned to the Cheyenne Motel where Bragg exited the cab. After dropping off Bragg, Larzelier drove **KEMPTER** and Hackett to the Lariat Motel.

6. Upon arrival at the Lariat Motel, **KEMPTER** told Larzelier to wait and he (**KEMPTER**) gave Larzelier a rolled up stack of $50 FRNs to hold and said, "If you take care of me, I'll take care of you. There is $2,000 more in my truck." (**KEMPTER**'s truck was subsequently

3

searched with his consent by CPD officers, but no CFT or genuine FRNs were found). Larzelier noticed that the money was "funny looking" and that several of the $50 FRNs were not cut evenly. Larzelier further noticed that several of the $50 FRNs had the same serial numbers. Larzelier subsequently contacted his supervisor who contacted the CPD.

7. On October 8, 2009, Officer Long contacted **KEMPTER** and Hackett at the Lariat Motel Room #3. **KEMPTER** invited Officer Long inside the room where he (Officer Long) noticed a white powdery substance on the dresser which was eventually identified as cocaine. **KEMPTER** told Officer Long that he hired Hackett to dance at his motel room for $800. **KEMPTER** further told Officer Long that the CFT $50 FRNs were his and he provided them to Larzelier to hold so Hackett would believe that **KEMPTER** had sufficient money to pay her with. **KEMPTER** admitted that he made the CFT $50 FRNs on a scanner/copier/printer located at his residence. However, **KEMPTER** told Long that it was his (**KEMPTER**'s) intent to pay Hackett and Larzelier with genuine money when **KEMPTER** returned to his residence. No genuine $50 FRNs were located at **KEMPTER**'s residence. **KEMPTER** further stated that he never told Larzelier the money was genuine, he only told Larzelier to hold on to the CFT FRNs. **KEMPTER** stated he had never printed counterfeit bills previously; however **KEMPTER** admitted he ". . . always thought about it, you know." **KEMPTER** reiterated that he did not want to be "burned" by Hackett but, "I wanted to make that front like the money was there."

8. On October 8, 2009, Officer Long interviewed Hackett. Hackett told Officer Long

that she met **KEMPTER** at the Green Door, 301 E. 16th, Cheyenne, WY. After leaving the Green Door, Hackett said that she was telephonically contacted by **KEMPTER** and asked if she and Bragg would dance for him for $800. Hackett said that she and Bragg took a cab to **KEMPTER**'s residence to pick him up. According to Hackett, the three (**KEMPTER**, Hackett and Bragg) drove around Cheyenne for about 30 minutes, at one point stopping at a store to purchase condoms. Hackett said that Bragg then requested to return to the Cheyenne Motel. Hackett further stated that after they dropped off Bragg, she (Hackett) and **KEMPTER** went to the Lariat Motel so she (Hackett) could perform a strip tease for **KEMPTER**.

9.   On October 8, 2009, Det. Eddy responded to the Lariat Motel at Officer Long's request, and arrested **KEMPTER**. According to Det. Eddy, he transported **KEMPTER** to the CPD for questioning. After reading **KEMPTER** his rights per *Miranda*, **KEMPTER** agreed to waive his rights and speak with Det. Eddy. **KEMPTER** said that he and a James Reitsma, and a laborer employed by Reitsma went to the Green Door where he (**KEMPTER**) saw Hackett and Bragg dancing. While at the Green Door, **KEMPTER** said he asked Hackett and Bragg for a private dance so he could touch them. Hackett and Bragg agreed to dance for him for $800.

10.  After leaving the Green Door, **KEMPTER** said that he returned to his residence and made the CFT $50 FRNs on his printer/scanner/copier combo machine (a Brother Multi-Function Center, model MFC-240C). According to Det. Eddy, **KEMPTER** said that he placed three $50 FRNs on the machine and printed 10 to 12 pages worth of CFT $50 FRNs. **KEMPTER** also thought

he printed some CFT $100 FRNs, but he could not account for their whereabouts. **KEMPTER** provided Det. Eddy consent to seize the Brother Multi-Function Center, which Det. Eddy did, and logged the machine into evidence. Your Affiant has reviewed the CFT $50 bills and they appear to have been made on a commercial copier.

11.  On October 8, 2009, Det. Eddy interviewed Hackett. Hackett said that she saw **KEMPTER** give the CFT $50 FRNs to Larzelier and heard him (**KEMPTER**) tell Larzelier to hold the money because he did not trust black girls (both Hackett and Bragg are African Americans) and he (**KEMPTER**) wanted Larzelier to hold the money until Hackett provided the "dance he (**KEMPTER**) wanted." Hackett was reassured when she saw the large number of $50 FRNs because she believed that he had the $800 he agreed to pay her for the dance.

## END OF AFFIDAVIT

## PENALTY SUMMARY

**DATE:** October 16, 2009

**DEFENDANT NAME:** RICKEY ARTHUR KEMPTER
a/k/a Rick Arthur Kempter

**VICTIM:** YES

**OFFENSE AND PENALTIES:**

| | | |
|---|---|---|
| OFFENSE: | Ct. 1: | 18 U.S.C. § 471<br>(Manufacturing Counterfeit Obligations of the United States) |
| PENALTY: | | 0-20 YEARS IMPRISONMENT<br>$250,000.00 FINE<br>3 YEARS SUPERVISED RELEASE<br>$100 SPECIAL ASSESSMENT |
| OFFENSE: | Ct. 2: | 18 U.S.C. § 472<br>(Possessing Counterfeit Obligations of the United States) |
| PENALTY: | | 0-20 YEARS IMPRISONMENT<br>$250,000.00 FINE<br>3 YEARS SUPERVISED RELEASE<br>$100 SPECIAL ASSESSMENT |
| TOTAL: | | 0-20 YEARS IMPRISONMENT<br>$500,000.00 FINE<br>3 YEARS SUPERVISED RELEASE<br>$200 SPECIAL ASSESSMENT |

**AGENT:** Rick Near, U.S. Secret Service    **AUSA:** Lisa E. Leschuck

*Penalty Summary Rickey Arthur Kempter a/k/a Rick Arthur Kempter*
*Page 2*

**ESTIMATED TIME OF TRIAL:**        **INTERPRETER NEEDED:**

✓  five days or less                           ___ Yes
___ over five days                            ✓  No
___ other

**THE GOVERNMENT:**

✓  will                                               ___ The court should not grant bond
                                                              because the defendant is not bondable
___ will not                                          because there are detainers from other
                                                              jurisdictions

    **SEEK DETENTION IN THIS CASE.**